United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN GROVE MALLOY,<br><br>   Plaintiff,<br><br>   v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,<br><br>   Defendants. | Case No. 19-cv-07995-TSH<br><br>**ORDER SCREENING COMPLAINT PURSUANT TO 28 U.S.C. § 1915(e)** |

## I. INTRODUCTION

On December 4, 2019, Plaintiff Stephen G. Malloy filed a complaint and an application to proceed in forma pauperis. The Court granted the application but found Malloy's complaint failed to state a claim on which relief could be granted. The Court directed Malloy to file an amended complaint that addressed the deficiencies of his original complaint or risk dismissal pursuant to 28 U.S.C. § 1915(e). This screening order addresses Malloy's Amended Complaint, which he filed on January 30, 2020. ECF No. 7.

## II. BACKGROUND

Malloy's original complaint named 57 defendants and asserted causes of action under Titles VI and VII of the Civil Rights Act of 1964 ("Title VI" and "Title VII"), the Age Discrimination in Employment Act of 1967 (the "ADEA"), the American with Disabilities Act of 1990 (the "ADA"), the Rehabilitation Act, the Equal Pay Act of 1963, Title IX of the Education Amendments of 1972 ("Title IX"), federal contractor law, federal disabled veteran employment law, and the Drug-Free Workplace Act of 1988, as well as claims for whistleblower retaliation, defamation, and sexual harassment. Compl., ECF No. 1.

On December 27, 2019, the Court issued a screening order advising Malloy that his complaint did not comply with Federal Rule of Civil Procedure 8 because it did not set forth a short and plain statement of his claims showing that he is entitled to relief. Specifically, the Court found that Malloy had failed to provide a simple, concise narrative that set forth which alleged injuries Malloy attributed to which Defendant. The Court advised Malloy that he must file an amended complaint which explains why each Defendant named is being sued. Specifically, Malloy must list factual allegations that connect each Defendant with an alleged wrongdoing, and identify which claim is asserted against which Defendant. The Court advised Malloy that, even though he is required to provide enough information to give Defendants fair notice of the claims against them, he does not need to provide a lengthy narrative to satisfy the pleading requirements of Rule 8—such a recounting is not necessary at the complaint stage.

Malloy filed his first Amended Complaint of Employment Discrimination (referred to hereafter as "FAC") on January 30, 2020. He now lists 62 defendants. He asserts causes of action under Titles VI and VII, the ADEA, the ADA, the Rehabilitation Act, the Equal Pay Act of 1963, Title IX, the Vietnam Era Veterans' Readjustment Assistance Act ("VEVRAA"), federal disabled veteran employment law, and the Drug-Free Workplace Act of 1988, as well as claims for whistleblower retaliation, defamation, and sexual harassment.

I. Malloy's Factual Allegations

Malloy alleges that he was hired by the University of California San Francisco ("UCSF") in July 2016 as a regular employee in the Human Resources Temporary Employment Program ("TEP"). FAC 16. He worked in the TEP through March 2018. *Id.* Malloy alleges that he always received praise for his work during that time, that he had a "100% clean personnel record," and that he was never disciplined or had any performance issues. *Id.* at 16-17. In November 2017, Malloy researched permanent jobs available at UCSF, found one as a Patient Navigator ("PN") that he qualified for, and applied for it. *Id.* at 17. With the new job, Malloy would continue working for UCSF but be "imbedded almost 100% of the time" with the San Francisco Department of Public Health ("DPH") at the DPH Sobering Center, *id.*, a 24/7 program providing

support to individuals actively intoxicated by alcohol.[1] Malloy was hired in April 2018 as a Registered Drug & Alcohol Technician (RADT-1) and began working part-time at the Sobering Center. *Id.* He began work under a six-month probationary period pursuant to UCSF personnel policy. *Id.* at 18. Upon satisfactory completion of his probationary period, October 2, 2018, Malloy was to receive permanent employment with UCSF. *Id.*

Malloy alleges that he consistently received excellent reviews while working as a PN. *Id.* He alleges that during his probationary period he was never disciplined or counseled on his behavior, never engaged in any misconduct, and never had any performance issues. *Id.* He alleges that on July 25, 2018, he was asked "by [his] colleagues" if he would consider working full-time and "working case management" for patients and clients, and that he applied for a full-time PN role that was posted on the UCSF HR website. *Id.* His HR paperwork was approved, and he was promoted to full-time with an effective date of August 1, 2018. *Id.* Malloy alleges that he was the only black male PN as UCSF in 2018, that he was the only gay male PN at UCSF, and that he was the only PN with veteran status at UCSF. *Id.* at 19.

Malloy's FAC runs 70 pages and amounts to an overwhelming labyrinth of factual allegations and legal conclusions, many of which cannot be easily or fully understood. Nevertheless, the Court gleans from Malloy's "Statement of Facts" what appear to be three main incidents that Malloy asserts as the basis for his claims of discrimination. The allegations are not entirely clear, but the Court extracts the following:

- One incident occurred in July 2018, wherein a black patient/client, whom Malloy refers to as "CA," was denied Benadryl cream by nurses at a detox center (Malloy doesn't make clear which center). Malloy accompanied CA to the nurses' station and asked for the medication, and was told by the nurse that, "[a] Benadryl request can only be dispensed with a prescription." Malloy claims he asked Jason Blantz, a white nurse practitioner at the Department of Public Health, for a prescription for the medication. The prescription was apparently provided, and CA was then

---

[1] http://www.sfsoberingcenter.com/what-we-do (last visited February 7, 2020).

3

allowed to get the Benadryl. Malloy apparently complained to someone at work that he was forced to obtain a prescription for the Benadryl while Anita Barzman, a psychiatrist, was not. Malloy asserts his complaint was ignored. FAC 20-21.

- An incident on September 20, 2018, wherein the same client, CA, was released to a recovery house with an incorrect medication form. Malloy alleges this error was the cause of a major relapse by CA, and that he informed his white colleagues of the reason for the relapse. FAC 21. Malloy alleges that he expressed criticism to his white colleagues concerning the Benadryl incident and the incorrect prescription, but that they "dismiss[ed] my critical information and [did] not provide relief, remedy or redress to me or my client." *Id.* at 22.

- An incident on September 27, 2018, wherein Malloy's UCSF Supervisor, a Dr. Gruber, who is white, met with Malloy at Malloy's request so that he could discuss the earlier two incidents. Malloy claims that "Dr. Gruber stated and agreed that white medical personnel did look down their noses at me based on my race and culture. That yes, both DPH and UCSF Doctors and Nurses were 'snooty,' and viewed me as not having the same educational background. Dr. Gruber affirmed the cultural bias of the medical professionals towards me and the resulting negligent impact on Client CA's care." *Id.* at 22-23. Neither DPH or UCSF followed up with Malloy on his report or took any corrective action. *Id.* at 23.

Malloy additionally claims that several of his co-workers, including a white female, a white male, a black female, and others, told him of situations in which patients or clients at the Sobering Center discriminated against them based on their race, sex, or sexual orientation. *Id.* at 23. In particular, he alleges that patients used the words "bitch," "slut," "whore," "nigger," and "faggot." *Id.* Malloy asserts that he filed "protected activity reports and complaints" on August 17, 2018 and September 6, 2018 on behalf of himself and those colleagues. *Id.* Malloy also asserts that sometime between September 7 and 27, 2018, he filed "protected activity reports and complaints concerning bias, discrimination, violations of medical standards of care and ethics concerning my patients/clients . . . ." *Id.* He states that no corrective actions were taken by his

4

supervisors. *Id.*

Malloy asserts that on September 27, 2018, Dr. Gruber met with him at Dr. Gruber's request, and for two hours they discussed the reports he had filed. He alleges that after that meeting, he met with six of his coworkers, and that they "engaged in concerted activity as [they] discussed the exact issues of discrimination, bias, cultural incompetent, patient failures in standard of care, safety, health and the welfare of our patients/clients that [Malloy] had shared with Dr. Gruber concerning my protected activity reports." *Id.*

Malloy alleges that on October 1, 2018, Dr. Grubber expelled him from his office without reason, and that on October 2, 2018, Dr. Gruber and UCSF HR Manager Connie Revore told him he was under investigation but could not say for what. He alleges that Gruber and Revore asked him questions "about [his] concerted activity from September 27, 2018," and that they interrogated and threatened him, suspended him, and "denied" him a permanent position, which was to be awarded to him that day. *Id.* at 23-24. Malloy was apparently suspended. *Id.* at 24. He alleges that he had his "probation date fraudulently changed" in violation of policy, and that he was charged with "a false claim of 'gender discrimination' and terminated for such." *Id.* The claim of gender discrimination apparently involved him describing certain female co-workers as "straight, white women" or the like, and Malloy being told that he couldn't refer to his colleagues as such because, "[t]hey are protected classes." *Id.* at 25. Malloy alleges that he was terminated on October 10, 2018 under a "probationary release." *Id.*

### III. SUA SPONTE SCREENING UNDER 28 U.S.C. § 1915(E)(2)

**A. Legal Standard**

The in forma pauperis statute provides that the Court must dismiss a complaint if it is frivolous, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). To make this determination, courts assess whether there is a factual and legal basis for the asserted wrong, "however inartfully pleaded." *Franklin v. Murphy*, 745 F.2d 1221, 1227-28 (9th Cir. 1984) (quotation omitted). Pro se pleadings are liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no

5

request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

**B.     Analysis**

    1.     **Federal Rule of Civil Procedure 8**

As a starting point, Malloy's FAC still suffers from the same problems as his original complaint. As the Court stated in its last screening order, Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth a "short and plain statement of the claim showing the pleader is entitled to relief." Rule 8(d)(1) requires that each allegation in a pleading be "simple, concise, and direct." *See McHenry v. Renne*, 84 F.3d 1172, 1177, 1179 (9th Cir. 1996) (affirming dismissal of complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant").

Malloy's FAC runs some 70 pages, single-spaced, and recites a litany of factual and conclusory allegations. Many of the factual allegations are repeated several times, in no coherent order, making them exceedingly redundant. This is a far cry from the "simple, concise, narrative" that the Court advised Malloy he must set forth in his complaint. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) (complaints are subject to dismissal if they are "needlessly long," "highly repetitious, confusing, or consist of incomprehensible rambling"). To be sure, Malloy has amended his complaint to provide clearer, separate sections (a fact section, a claims section, etc.), but new factual allegations can be found scattered throughout the FAC. Furthermore, Malloy still has not clearly connected each claim to the dozens of Defendants he lists under each claim, nor has he clearly connected most of the Defendants to any alleged conduct for which they might be liable. It is still impossible to determine with certainty which of the 62 Defendants Malloy believes are responsible for what conduct. Malloy simply "lumps defendants [together] without facts to distinguish their individual alleged wrongs." *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1119 (E.D. Cal. 2014). Therefore, Malloy has not provided most Defendants with fair notice of the nature of the claims against them. In other words, he has not made it feasible for the Defendants to understand what conduct he alleges they engaged in and how that conduct makes them liable under any of his numerous causes of action. His FAC is therefore defective under Rule 8, and is subject to dismissal. If Malloy chooses to

6

again amend his complaint, he must: (1) <u>provide a clear, concise, simple narrative of the facts</u> he believes form the basis of his complaint; (2) <u>give notice to each Defendant</u> of why they are being sued by connecting each Defendant, with fact allegations, to whatever claim Malloy believes they are liable for—simply lumping together dozens of defendants under each claim is not acceptable and will result in the Court recommending dismissal.

Beyond those problems, several of Malloy's claims appear, based on the facts pleaded in Malloy's FAC, to have no chance of succeeding. And several of the Defendants whom Malloy named are likely immune from suit, meaning they cannot be sued for damages under any claim. The Court will proceed to address those additional issues now.

2. **Federal and State Government Immunity from Suit**

Malloy lists as defendants several employees of the federal government or the University of California in their official capacities (e.g., the Acting District Director of the U.S. Department of Labor, Office of Federal Contract Compliance).

The doctrine of sovereign immunity holds that a government may not be sued without its consent. Sovereign immunity extends to lawsuits against government officials acting in their official capacities, as these are essentially just lawsuits against the government by another name. *Lewis v. Clarke*, 137 S. Ct. 1285, 1290-91 (2017) ("Similarly, lawsuits brought against employees in their official capacity represent only another way of pleading an action against an entity of which an officer is an agent, and they may also be barred by sovereign immunity.") (citations and internal quotation marks omitted). This immunity means that, generally, "the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Before a court can have jurisdiction over any suit for damages against the government or its employees in their official capacities, there must be "a clear statement from the United States waiving sovereign immunity, together with a claim falling within the terms of the waiver." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (citations omitted). Malloy's complaint does not coherently link the three federal government Defendants he names to any alleged conduct or

7

claim. But it's likely that these three Defendants[2] are immune from suit, meaning Malloy cannot sue them for damages.

Also, "under the Eleventh Amendment, states are immune from private damage actions in federal court." *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982). In other words, they cannot be sued for damages in federal court. "[T]he University of California and the Board of Regents are considered to be instrumentalities of the state for purposes of the Eleventh Amendment." *Id.* (citations omitted). Thus, the University of California and the Board of Regents cannot be sued for damages in federal court. This includes officers acting in their official capacity. *Id.* ("Eleventh Amendment immunity extends to actions against state officers sued in their official capacities because such actions are, in essence, actions against the governmental entity of which the officer is an agent."). Most of Malloy's named defendants are the University of California, the Board of Regents of the University, or individuals in their official capacity. It is true that immunity does not bar suits against state officials for prospective injunctive and declaratory relief. *Walsh v. Nevada Dept. of Human Resources*, 471 F.3d 1033, 1036 (9th Cir. 2006). But Malloy does not pray for any specific injunctive relief—he makes only a generalized demand for "injunctive relief." *See* FAC 67. As such, it is likely that a good portion of Malloy's named Defendants are immune from suit as state officers.

Malloy is advised that if he chooses to amend but continues to assert only damages against these Defendants, the Court will likely recommend their dismissal from this suit.

3. **Title VII of the Civil Rights Act**

Under Title VII, it is "unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2. In other words, "Title VII prohibits discrimination 'because of' a protected characteristic" such as race, color,

---

[2] The Defendants, as Malloy names them, are the "Acting District Director, U.S. Department of Labor, Office of Federal Contract Compliance;" "District Manager, U.S. Department of Labor, Office of Federal Contract Compliance;" and "Inspector General, Office of Inspector General, Department of Veteran Affairs."

8

religion, sex, or national origin. *Costa v. Desert Palace*, 299 F.3d 838, 847 (9th Cir. 2002) (quoting 42 U.S.C. § 2000e-2). "To prevail on a Title VII discrimination claim, [Malloy] must establish a prima facie case of discrimination by presenting evidence that 'gives rise to an inference of unlawful discrimination.'" *Nelson v. Lewis County*, 2012 WL 4112886, at *5 (W.D. Wash. Sept. 19, 2012) (quoting *Cordova v. State Farm Ins. Co.*, 124 F.3d 1145, 1148 (9th Cir. 1997). To establish a prima facie case of disparate treatment discrimination—in other words, a case that he was treated unfairly because of discrimination—Malloy must show that (1) he belongs to a protected class; (2) he was qualified for his position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

Malloy is a black, gay, male. Race and sex are protected classes. Sexual orientation could be as well.[3] However, Malloy has not alleged any facts which give rise to an inference that he was discriminated against based on his sex, gender or sexual orientation. Also, Malloy cannot assert sex discrimination claims on behalf of his female co-workers. If his female co-workers were discriminated against by their employer based on their sex or gender—and Malloy has alleged no facts suggesting that they were called names *by their employer*—those co-workers would need to sue for themselves.

Turning to Malloy's allegation of race discrimination, Malloy appears to allege that Blantz, a white nurse practitioner, was able to obtain a prescription for medication while he was not, and that Anita Barzman, a white psychiatrist, was able to independently issue a prescription for the same medication. Even if Malloy could prove that these two employees were able to obtain a prescription for medication when he could not, neither is a "similarly situated" individual. Blantz is a nurse practitioner, and Barzman is a psychiatrist (psychiatrists, for one, are medical doctors who can prescribe medication). For Malloy to be able to prove a case of Title VII discrimination, he would need to prove that similarly situated individuals—in other words, other PNs—were treated differently than him; this incident does not show that.

---

[3] The issue of whether Title VII prohibits discrimination based on sexual orientation is currently before the United States Supreme Court.

9

The second incident gives rise to no inference of unlawful discrimination. Malloy apparently conveyed to white colleagues his criticisms that a black patient was given an incorrect medication form at discharge, and his complaint was apparently "dismissed." But Malloy has alleged no facts giving rise to an inference that white colleagues intentionally gave CA the incorrect medication, or that they paid less attention or concern to CA's medication list because CA was black. Nor does the lack of response to Malloy's complaint give rise to an inference of discrimination—it may have simply been that Malloy's colleagues or supervisors found his complaint lacked any merit.

Malloy alleges also that patients of the Sobering Center called him names like "faggot" and "nigger." While those terms are indeed discriminatory and repugnant, Malloy has not alleged that any of Defendants' *employees* used those terms, or any other names that disparaged Malloy because of his race, gender, sex, or sexuality. Title VII prohibits discrimination *by employers* but does not generally impose liability for the conduct of non-employers.

The only facts Malloy has alleged that, *if true*, would create an inference of race discrimination are his allegations that Dr. Gruben "stated and agreed that white medical personnel did look down their noses at me based on my race and culture. . . . Dr. Gruber affirmed the cultural bias of the medical professionals towards me and the resulting negligent impact on Client CA's care." FAC 22-23.

In sum, based on the allegations in FAC, Malloy cannot prove a discrimination claim based on sex, gender, or sexual orientation. Malloy is advised that if amends his complaint, the Court will likely recommend dismissal of his complaint to the extent it asserts liability on those grounds.[4]

---

[4] Also, to the extent Malloy alleges that Defendants allowed a hostile work environment to prevail at his work, most of the Defendants had no apparent responsibility to respond to Malloy's complaints about discrimination by patients of the Sobering Center. A person or entity does not become liable merely because Malloy complained to them and they did not respond, if the person or entity had no responsibility to respond to Malloy's complaints in the first place. This seems to account for a large chunk of the Defendants. *See* FAC 27 ("Every Defendant I've cited has touched, been informed and chosen to ignore my reports complaints.").

10

4. **Title VIII of the Civil Rights Act**

Title VIII is the Fair Housing Act ("FHA"). The FHA was enacted "to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. The Act makes it illegal to discriminate on an impermissible ground in the sale or rental of housing, in residential real estate-related transactions, or in the provision of brokerage services. 42 U.S.C. §§ 3604, 3605, 3606. Malloy has made no factual allegations concerning discrimination in any of those areas, nor even any factual allegations related to housing. He has not stated a plausible claim under Title VIII. If Malloy amends his complaint and continues to allege a claim under the FHA, the Court will recommend dismissal of that claim.

5. **The ADEA**

"The ADEA was initially enacted to protect private sector employees from discrimination based on age, and was amended by Congress in 1974 to extend protection to federal employees." *Yap v. Slater*, 165 F. Supp. 2d 1118, 1126 (D. Haw. 2001) (citing *Lehman v. Nakshian*, 453 U.S. 156 (1981)). Under the ADEA, each plaintiff can establish a prima facie case of disparate treatment by demonstrating that he (1) was at least forty years old, (2) performing his job satisfactorily, (3) suffered an adverse employment action, (4) under circumstances otherwise giving rise to an inference of age discrimination. *See Diaz v. Eagle Produce, Ltd.*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citation omitted); Shelly *v. Geren*, 666 F.3d 599, 608 (9th Cir. 2012) (citation omitted);

Malloy makes no factual allegations that give rise to an inference of age discrimination. He complains merely that he was "interrogated by younger white women under 40 . . . ." FAC 43. Nothing in the ADEA prohibits a younger employee from taking adverse employments action against an older employee if that action is not based on age discrimination. Malloy has alleged no facts suggesting that he was interrogated because of his age, or that he was denied a promotion because of his age, or that he was put on probation or terminated because of his age, or that he was treated unfairly *because of his age*. He has not stated a plausible ADEA claim. If Malloy amends his complaint and continues to allege a claim under the ADEA, the Court will recommend dismissal of that claim.

11

6. **The ADA**

"The ADA was enacted 'to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities' and 'to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities.'" *Updike v. Multnomah Cty.*, 870 F.3d 939, 949 (9th Cir. 2017) (quoting 42 U.S.C. § 12101(b)(1), (2)). Under Title I of the ADA, no covered employer "shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. To be protected by the ADA, an employee "must have a disability, which is defined by the ADA as a physical or mental impairment that substantially limits one or more major life activities, a person who has a history or record of such an impairment, or a person who is perceived by others as having such an impairment." https://www.ada.gov/ada_intro.htm (last visited Feb. 9, 2020); *see* 42 U.S.C. § 12102(1)(A)-(C).

Malloy has not alleged facts suggesting that he is an individual with a qualifying disability in order to be protected by the ADA. He merely refers to himself repeatedly as disabled, without identifying any particular disability. Additionally, even if Malloy were a qualified individual with a disability, he would also need to show that "suffered an adverse employment action because of his disability." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1090 (9th Cir. 2002). Malloy has not alleged any facts giving rise to any inference that he suffered an adverse employment action because his employer knew or perceived that Malloy was disabled. The ADA does not prohibit entirely employers from firing persons with disabilities; it does only if the reason for termination is discrimination based on disability. If Malloy amends his complaint and continues to allege a claim under the ADA, the Court will recommend dismissal of that claim.

7. **The Rehabilitation Act**

Section 504 of the Rehabilitation Act (codified at 29 U.S.C. § 794) provides that, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be

12

subjected to discrimination under any program or activity receiving Federal financial assistance." Section 504 further "provides that '[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act . . . as such sections relate to employment.'" *Fleming v. Yuma Reg'l Med. Ctr.*, 587 F.3d 938, 940 (9th Cir. 2009) (quoting 29 U.S.C. § 794(d)). Thus, similar to the ADA, "[t]o state a prima facie claim of discrimination under Section 504, plaintiff must allege that: (1) [he] is disabled within the meaning of the Act; (2) [he] was able to perform the essential aspects of [his] employment either without accommodations or with reasonable accommodations; (3) defendant receives federal financial assistance; and (4) defendant engaged in adverse employment action(s) that impermissibly discriminated against plaintiff based on [his] disability. *Ostrofsky v. Dep't of Rehab.*, 2009 WL 3011578 (citing *Bonner v. Lewis*, 857 F.2d 559, 562-63 (9th Cir. 1988); *Duffy v. Riveland*, 98 F.3d 447, 454 (9th Cir. 1996); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001)).

Malloy's Rehabilitation Act claim suffers from the same problems as his ADA claim: he has not alleged facts with any specificity suggesting that he is disabled within the meaning of the Rehabilitation Act, and he has not alleged any facts suggesting he was discriminated against on the basis of disability. The claim suffers from the additional problem that it's not clear that Malloy's employer receives federal financial assistance. If Malloy amends his complaint and continues to allege a claim under the Rehabilitation Act, the Court will recommend dismissal of that claim.

8. **Title IX of the Education Amendments of 1972**

"Title IX was Congress's response to significant concerns about discrimination against women in education." *Neal v. Board of Trustees*, 198 F.3d 763, 766 (9th Cir. 1999). It was "designed to eliminate (with certain exceptions) discrimination on the basis of sex in any education program or activity receiving Federal financial assistance, whether or not such program or activity is offered or sponsored by an educational institution . . . ." 34 C.F.R. § 106.1.

A court "generally look[s] to Title VII standards to resolve claims brought under Title IX." *Bolla v. McClain*, 469 Fed. Appx. 531, 532 (9th Cir. 2012) (citation omitted). Thus, similar to a

13

Title VII claim, to set forth a prima facie Title IX gender discrimination claim, Malloy would need to prove that his work program received federal assistance. He would then need to show that he suffered an adverse employment action and his employer treated him worse than a similarly situated female employee. *See Stucky v. Hawaii*, 2007 WL 602105, at *6 (D. Haw. Feb. 15, 2007) (citing *Cornwell v. Electra Cent. Union*, 439 F.3d 1018, 1028 (9th Cir.2006) (setting forth elements of a prima facie case under Title VII). Malloy has alleged no facts suggesting that he was treated worse than female colleagues because he is male. He has not established that his work program received federal assistance. If Malloy amends his complaint and continues to allege a claim under Title IX, the Court will recommend dismissal of that claim.

9. **Defamation**

"Under California law, defamation 'involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage.'" *Price v. Stossel*, 620 F.3d 992, 998 (9th Cir. 2010) (*Gilbert v. Sykes*, 147 Cal. App. 4th 13, 27 (2007)). "Thus, to state a defamation claim, the plaintiff must present evidence of a statement of fact that is provably false." *Grenier v. Taylor*, 234 Cal. App. 4th 471, 486 (2015) (citations omitted). Malloy has not alleged any statement by Defendants that is provably false, nor has he alleged that any Defendants published—intentionally or otherwise—any statement about him. Nor has he alleged any damage to his reputation. "[D]efamation, which includes libel and slander, concerns damage to the reputation of a person or business . . . ." *Hartford Casualty Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 289 (2014). If Malloy amends his complaint and continues to allege a claim for defamation, the Court will recommend dismissal of that claim.

10. **The Drug-Free Workplace Act of 1988**

"The Drug-Free Workplace Act requires federal contractors and grant recipients to discourage and punish drug use amongst employees." *Santiago v. Greyhound Lines, Inc.*, 956 F. Supp. 144, 152 (S.D.N.Y. 1997). It is not clear that the Act even contemplates a private cause of action, but "[t]he question of whether a private right of action exists is irrelevant; [Malloy] has not even alleged facts which give rise to a violation of the statute." *Harris v. Aero. Testing Alliance*, 2008 WL 111979, at *4 (E.D. Tenn. Jan. 7, 2008). If Malloy amends his complaint and continues

14

to allege a claim under this statute, the Court will recommend dismissal of this claim.

11. **The Equal Pay Act**

The Equal Pay Act, as it appears in volume 29 of the United States Code, provides that, "[n]o employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which [it] pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . ." 29 U.S.C. § 206. Malloy has not alleged that he was paid less than female colleagues for equal work (nor has he alleged any employee of either gender was paid less on the basis of sex). If Malloy amends his complaint and continues to allege a claim under the Equal Pay Act, the Court will recommend dismissal of that claim.

12. **VEVRAA and Executive Order 11246**

Neither the Vietnam Era Veterans' Readjustment Assistance Act nor Executive Order 11246 provides a private right of action. *Hall v. L-3 Commc'ns Corp.*, 2017 WL 216707, at *2 (E.D. Wash. Jan. 18, 2017) ("Plaintiffs do not allege Defendants violated either of these laws, indeed, neither provides a private right of action."); *Armstrong v. Rolm A. Siemans Co.*, 1997 U.S. App. LEXIS 31898, at *8 (4th Cir. 1997) ("[T]here is no private cause of action against federal contractors under § 402 of the Vietnam Era Veterans' Readjustment Assistance Act of 1974."). Thus, Malloy cannot sue under either of those laws. Additionally, Malloy has not established that employer was a federal government contractor subject to those laws.[5] He does allege (vaguely) a "contract relationship" between the State (presumably, California) and the city (presumably, San Francisco), but such a contract would not be one involving the *federal* government, and Malloy has not suggested his *employer* is a government contractor. Finally, Malloy has not alleged any facts suggesting that he was discriminated against or treated any differently because of his veteran status. If Malloy amends his complaint and continues to allege claims under VEVRAA and

---

[5] For, example, Malloy asserts "[t]he State, as in my employer UCSF, was [established] as the 'Independent Contractor' responsible for the case management of DPH Sobering Center Clients under the 7-1-18 Regents & City of San Francisco Contract." FAC 18.

15

pursuant to Executive Order 11246, the Court will recommend dismissal of those claims. *See DeSmit v. DFW Int'l Airport Bd.*, 2011 WL 5346315, at *4 (N.D. Tex. Nov. 3, 2011) (plaintiff had not pled "any actionable claims" because he had "not alleged that defendant [was] a federal contractor, or that [he was] a 'qualified' covered veteran . . . . In fact, [he had] alleged no action taken by defendant that [he] believe[d] was predicated on his alleged veteran status.").

### 13. **Sexual Harassment**

Malloy alleges that he was "subjected to harassment by my immediate supervisors and managers who rejected [his] written protected disclosure of a hostile work environment . . . ." FAC 30. Under Title VII, a hostile work environment sexual harassment claim requires a plaintiff employee to show that he was subjected to sexual advances, conduct, or comments that were "(1) unwelcome; (2) because of sex; and (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment. In addition, [he] must establish the offending conduct was imputable to [his] employer." *Lyle v. Warner Brothers Television Productions*, 38 Cal. 4th 264, 279 (2006) (citations omitted); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015). Malloy has alleged no facts suggesting he was subject to unwelcome conduct or comments, *imputable to his employer*, that were based on his sex. The unwelcome and offensive comments that Malloy alleges appear to have come from patients at the Sobering Center. Also, the conduct that would substitute sexual harassment seem to have been directed largely if not entirely at Malloy's female colleagues, meaning that they, and not Malloy would have to assert whatever claim arose from them.

Similarly, to the extent Malloy links his harassment claim to race discrimination, *see* FAC 36, he does not assert that the use of the term "nigger" at his workplace was imputable to his employer, as distressing as it may have been for him to hear that term. If Malloy amends his complaint and continues to allege a claim of harassment, the Court will recommend dismissal of that claim.

### 14. **Retaliation**

"In order to establish a prima facie case of retaliation under Title VII, [Malloy] must demonstrate that (1) [he] engaged in an activity protected under Title VII; (2) [his] employer

16

subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004) (citation omitted). Malloy alleges that after he met with Dr. Gruber on September 27, 2018, he met with six of his coworkers, and that they "engaged in concerted activity as [they] discussed the exact issues of discrimination, bias, cultural incompetent, patient failures in standard of care, safety, health and the welfare of our patients/clients that [Malloy] had shared with Dr. Gruber concerning my protected activity reports." FAC 23. Malloy then alleges that on October 2, 2018, Dr. Gruber and Revore told him he was under investigation but could not say for what, that they asked him questions "about [his] concerted activity from September 27, 2018," and that they interrogated and threatened him, suspended him, and eventually terminated him. *Id.* at 23-24. These allegations are enough to give rise to an inference of a causal link. If Malloy wishes to amend his FAC, however, he will need to more clearly link to his retaliation claim which Defendants he believes are liable for that conduct, with specific factual allegations, in order to put Defendants on notice.

15. **Whistleblower Protection**

Malloy states a claim referencing whistleblower protections. *See* 55-56. However, he references the "City Whistleblower Office" and "Whistleblower Reports to the University," so it is not clear under which law Malloy asserts whistleblower protection (university, city, state, federal, etc.). It's also unclear to whom he made any complaints about his work. Nor does he clearly allege any retaliation he experienced for making any complaints. If Malloy chooses to revise his complaint, he must state under which law he seeks relief, and more clearly allege what conduct he complained of, to whom he complained, and what retaliation he experienced, or the Court will recommend dismissing this claim. *See Coons v. Sec'y of the United States Dep't of the Treasury*, 383 F.3d 879, 888 (9th Cir. 2004) (successful whistleblower claim under 5 U.S.C. § 2302 requires an acting official who "has the authority to take, recommend, or approve any personnel action," and, "the acting official took, or failed to take, the personnel action against the aggrieved employee because of the protected disclosure.") (citation omitted).

16. **Breach of Contract**

To the extent Malloy pleads a breach of contract claim, *see* FAC 59-60, he has failed to allege the existence of a contract or any term of a contract that was breached. If he chooses to amend, the Court will recommend dismissal of this claim.

### IV. CONCLUSION

Based on the discussion above, the Court would recommend dismissal. However, given Malloy's pro se status, and because the facts he alleges might support at least one viable claim, the Court will grant Malloy one more opportunity to amend. Malloy must file a second amended complaint by March 16, 2020, addressing the deficiencies discussed in this order, including his failure to comply with Federal Rule of Civil Procedure 8. A lengthy narrative of the facts is not necessary, and his second amended complaint shall not include a redundant listing of facts.

Even though the Court will grant Malloy opportunity to amend, if he does choose to amend, the Court will likely recommend dismissal of the following claims if Malloy re-alleges them: Malloy's claim under the Age Discrimination in Employment Act of 1967; his claim under the American with Disabilities Act of 1990; his claim under Title IX of the Education Amendments of 1972; his claim under Title VIII (the Fair Housing Act); his defamation claim; his claim under the Drug-free Workplace Act of 1988; his claim under the Equal Pay Act of 1963; his claim under the Vietnam Era Veterans Readjustment Assistance Act; his claim pursuant to Executive Order 11246; his breach of contract claim. Lastly, the Court reminds Malloy that he likely cannot sue for damages the federal defendants he named, or the University of California or its officers, or the Board of Regents, or officers of any of those three. If Malloy prays for any specific injunctive relief, he must say so in amending his complaint.

**IT IS SO ORDERED.**

Dated: February 18, 2020

THOMAS S. HIXSON
United States Magistrate Judge